*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0766**

BMO Harris Bank, N. A.,
successor by merger to M&I Marshall & Ilsley Bank,
Respondent,

vs.

City Center Development, LLC,
Appellant,

Glen Haven Center, LLC, et al.,
Defendants.

**Filed January 9, 2017
Affirmed
Ross, Judge**

Dakota County District Court
File No. 19HA-CV-15-3176

Timothy M. Kelley, Calvin P. Hoffman, Stinson Leonard Street LLP, Minneapolis, Minnesota (for respondent)

Jack Atnip III, Hellmuth & Johnson PLLC, Edina, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Cleary, Chief Judge, and Jesson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

This dispute arises from City Center Development LLC's failure to repay two bank loans totaling $2 million, and the appeal concerns City Center's disagreement with the

district court's decision to appoint a limited receiver in the resulting mortgage-foreclosure action. City Center argues that the directive in Minnesota Statutes section 576.25, subdivision 5(a) (2016), for the appointment of a limited receiver "after the commencement of mortgage foreclosure proceedings" in specified circumstances, does not actually mandate the appointment unless the elements of subdivision 5(b) are also met. It also contends that the district court erred by appointing a receiver after it found that the appointment might be inequitable or unnecessary. Because section 576.25 unambiguously mandates the appointment, we affirm.

## FACTS

City Center Development LLC borrowed $2 million from Marshall & Ilsley Bank (M&I) in March 2006 under a revolving loan agreement so City Center could purchase and develop commercial property in Farmington. The loan was completed under two separate promissory notes, the first for $1.5 million and the second for $500,000. To secure the loan, City Center granted M&I a mortgage on the purchase property, and it assigned its leases and rents to M&I. Principals Glen Haven Center LLC, Thomas Wartman, and Rea Wartman also personally guaranteed City Center's repayment.

City Center developed and leased the property. It paid the property taxes and insurance premiums, but it failed to pay the balance on the $500,000 note by its maturity date of April 30, 2007. The parties amended their agreement, extending the maturity date to March 21, 2014. They also extended the maturity date on the $1.5 million note to the same date.

By March 2014, M&I had merged with BMO Harris Bank, N.A. City Center was not prepared to pay off the loans on schedule, and the parties entered into a forbearance agreement in which City Center and the loan guarantors admitted to being in default. The parties amended the forbearance agreement twice to extend the deadline for full repayment to May 21, 2015.

City Center missed the new repayment deadline. BMO Harris mailed it a notice of default in June 2015. By the end of August 2015, City Center still owed the bank about $1,687,750. BMO Harris commenced a foreclosure action in district court. Its complaint alleged breach of contract and sought to foreclose the mortgage. BMO Harris also moved for the appointment of a limited receiver, and the district court granted the motion based on its understanding of Minnesota Statutes section 576.25, subdivision 5(a). In doing so, it opined that appointing a receiver might be inequitable or unnecessary because City Center properly managed the property and remained current on its insurance and property tax payments.

City Center appeals.

## D E C I S I O N

City Center contests the district court's limited-receiver appointment. It first challenges the district court's decision to apply section 576.25, subdivision 5(a), exclusively, without also applying the qualifications of subdivision 5(b). And it challenges the district court's treatment of the appointment statute as mandatory rather than discretionary and the district court's failure to credit its own statement that appointing a receiver may be inequitable or unnecessary. Both arguments require us to interpret the

3

statute, a task we undertake de novo. *See Swenson v. Nickaboine*, 793 N.W.2d 738, 741

(Minn. 2011).

*Meaning of Minnesota Statutes Section 576.25, Subdivision 5*

We must interpret section 576.25, subdivision 5. Our task is to determine what the

legislature intends by it. *Martin v. Dicklich*, 823 N.W.2d 336, 342 (Minn. 2012). Our first

(and possibly final) step is to see if the statute's language is unambiguous based on the

plain and ordinary meaning of its words. *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d

273, 277 (Minn. 2000). If it is, we apply the unambiguous statute regardless of any other

consideration, including what we suppose are the statute's underlying policy

considerations. Minn. Stat. § 645.16 (2016) ("When the words of a law in their application

to an existing situation are clear and free from all ambiguity, the letter of the law shall not

be disregarded under the pretext of pursuing the spirit.").

We are satisfied that the questioned statute is unambiguous:

> A limited receiver shall be appointed at any time after the commencement of mortgage foreclosure proceedings under chapter 580 or 581 and before the end of the period for redemption, if the mortgage being foreclosed:
>
> (1)  secures an original principal amount of $100,000 or more or is a lien upon residential real estate containing more than four dwelling units; and
> (2)  is not a lien upon property that was entirely homesteaded, residential real estate containing four or fewer dwelling units where at least one unit is homesteaded; or agricultural property.
>
> The foreclosing mortgagee or the purchaser at foreclosure sale may at any time bring an action in the district court of the county in which the mortgaged property or any part thereof is located for the appointment of a receiver; provided,

4

> however, if the foreclosure is by action under chapter 581, a separate action need not be filed.

Minn. Stat. § 576.25, subd. 5(a).

The legislature informs us that where, as here, it uses the word "shall," it intends to convey mandatory action. Minn. Stat. § 645.44, subd. 16 (2016). The subdivision therefore requires (rather than merely allows) the district court to appoint a limited receiver if its two stated qualifications are met during the designated period. Undisputedly, BMO Harris had initiated "commencement of mortgage foreclosure proceedings under chapter 580 or 581." It also sought a receiver's appointment "before the end of the period for redemption." City Center's "mortgage being foreclosed . . . secures an original principal amount of $100,000 or more," and the mortgage is not a lien on residential or agricultural property. On those undisputed facts, the district court applied the subdivision's plain and unambiguous language precisely.

But City Center contends that the district court misunderstood the subdivision by ignoring its next paragraph. It maintains that the qualifications of Minnesota Statutes section 576.25, subdivision 5(b) (2016) must also be met. The argument properly recognizes that we read and construe a statute as a whole and interpret each section in light of the surrounding sections to avoid conflicting interpretations. *Am. Family Ins. Grp.*, 616 N.W.2d at 277; *see also Schmidt ex rel. P.M.S. v. Coons*, 818 N.W.2d 523, 527 (Minn. 2012) ("When interpreting statutes, we do not examine different provisions in isolation."). But the argument assumes a connection between the subdivision's two paragraphs. The connection does not exist.

The additional paragraph states as follows:

> The court shall appoint a receiver upon a showing that the mortgagor has breached a covenant contained in the mortgage relating to any of the following:
>
> (1) application of tenant security deposits as required by section 504B.178;
> (2) payment when due of prior or current real estate taxes or special assessments with respect to the mortgaged property or the periodic escrow for the payment of the taxes or special assessments;
> (3) payment when due of premiums for insurance of the type required by the mortgage or the periodic escrow for the payment of the premiums; or
> (4) keeping the covenants required of a landlord or licensor pursuant to section 504B.161, subdivision 1.

Minn. Stat. § 576.25, subd. 5(b). This additional paragraph of the subdivision uses plain language to obligate the district court to appoint a receiver if certain mortgage covenants have been breached. The independent nature of paragraphs 5(a) and 5(b) is apparent by the different nature of the conditions that each lists, and by the different nature of the receiverships each requires ("limited receiver" under subdivision 5(a) and "receiver" under 5(b)). The grammatical and structural framework of the entire subdivision corroborates the independence of paragraphs 5(a) and 5(b). The legislature chose to include no coordinating conjunction or semicolon connecting subdivision paragraphs 5(a) and 5(b). *See* Minn. Stat. § 645.08(1) (2014) (asking courts to construe words and phrases based in part on the "rules of grammar"). The phrase "a limited receiver *shall* be appointed" in subdivision 5(a) would be superfluous if that paragraph's conditions were met and also subject to the further requirements stated later in the subdivision. This construction would offend our assumption that every word has meaning. *See* Minn. Stat. § 645.16; *see Am. Family Ins. Grp.*, 616

6

N.W.2d at 277 (stating that a statute should be interpreted so that no word, phrase, or sentence is rendered superfluous, void, or insignificant).

At oral argument, City Center urged us to look at the 2009 version of the statute regarding appointment of receivers of mortgaged property. But the legislature repealed that version in 2012. Minn. Stat. § 576.01, subd. 2 (2010), *repealed by* 2012 Minn. Laws ch. 143, art. 3, § 39, at 86. The legislature in essence recodified section 576.01, subdivision 2 in section 576.25, subdivision 5, by establishing a revised framework, with more concrete subdivisions and subparts, for the receivership-appointment process in mortgaged-property cases. 2012 Minn. Laws ch. 143, art. 1, § 5, at 55–56 (current version at Minn. Stat. § 576.25, subd. 5). We hold that subdivision 5(a) stands independently.

The district court correctly interpreted and applied section 576.25, subdivision 5(a), to appoint a limited receiver. We turn to City Center's alternative argument.

### *District Court Discretion in Deciding Whether to Appoint Receiver*

City Center maintains that, even if the statute seems to impose a mandatory duty, appointing a receiver is an equitable remedy subject to the district court's discretion. Building on that premise, it argues that, because the district court found that a receivership appointment here may be "unequitable, unnecessary, or both," the court had no discretion to appoint a receiver. The argument relies on caselaw that indicates that appointment of a receiver is "made by a court of equity" and falls "within the discretion of the [district] court." *Asleson v. Allison*, 188 Minn. 496, 499, 247 N.W. 579, 580 (1933); *see Minn. Hotel Co., Inc. v. ROSA Dev. Co.*, 495 N.W.2d 888, 891 (Minn. App. 1993); *see also Tibbals v. Tibbals*, No. A13-2419, 2014 WL 5121114, at *3 (Minn. App. Oct. 14, 2014). But these

7

cases did not address subdivision 5(a)'s mandatory language. Instead, they interpreted other statutes—statutes under which the appointment of a receiver was permissive. *See State Bank of Delano v. CenterPoint Energy Res. Corp.*, 779 N.W.2d 582, 585–87 (Minn. App. 2010) *review denied* (Minn. May 26, 2010) (stating that a mortgage-foreclosure receivership is statutorily distinguished from other receiverships). Even a court acting in equity with broad discretion lacks the discretion to disregard an appointment mandated by statute. *See Wells Fargo Home Mortg., Inc. v. Chojnacki*, 668 N.W.2d 1, 5 (Minn. App. 2003). The district court did not err by concluding that the statute mandated appointing a limited receiver.

**Affirmed.**